## MISSOURI–KANSAS PIPE LINE CO. v. COLUMBIA OIL & GASOLINE CORPORATION et al.

### Civil Action No. 172.

District Court, D. Delaware.

April 16, 1941.

Arthur G. Logan (of Logan & Duffy), of Wilmington, Del., Robert J. Bulkley, of Cleveland, Ohio, and Russell Hardy, of Washington, D. C., for Missouri-Kansas Pipe Line Co.

William H. Button and James B. Alley (of Auchincloss, Alley & Duncan), both of New York City, and Daniel O. Hastings (of Hastings, Stockly & Layton), of Wilmington, Del., for Columbia Oil & Gasoline Corporation.

Hugh M. Morris and Edwin D. Steel, Jr., both of Wilmington, Del., for Panhandle Eastern Pipe Line Co.

Christopher L. Ward, Jr., of Wilmington, Del., and Douglas Campbell (of Camp-

bell, Harding, Goodwin & Danforth), of New York City, for Gano Dunn.

KIRKPATRICK, District Judge.

This is a motion to remand a suit in equity instituted in the Court of Chancery of Delaware and subsequently removed to this Court. There are also motions to dismiss and for summary judgment, but, inasmuch as the motion to remand will be granted, the other motions will not be considered.

It will not be necessary to go into the entire complicated history of the corporate dealings and the ensuing litigation in various courts, which led up to the present suit. The immediate background may be stated as follows:

One of these defendants, Columbia Oil, was, at the beginning of the year 1936, a defendant in two anti-trust suits, one brought by the Government for the usual injunctive relief, and the other by the present plaintiff (by its then receivers) to recover treble damages. Both actions were based on substantially the same facts. In the Government suit a stipulation was entered into, followed by a consent decree on January 29, 1936, based on the stipulation. The stipultion provided, among other things, that Columbia Oil would make a bona fide offer in writing to the receivers of Mokan for the settlement of their claims (including, of course, the Sherman Act, suit). Columbia Oil complied with the stipulation, but the offer of settlement was at first rejected by the receivers, and no agreement was reached until certain modifications, changing it substantially, had been made. As so changed and finally accepted the settlement was approved by the receivership Court (Delaware Chancery) on April 29, 1936.

In accordance with the provisions of the settlement agreement as so approved, a readjustment was made of the fiscal structure of Panhandle Eastern, the stockholding of Columbia Oil in which company had been attacked in the two anti-trust suits as the root of the monopoly. After the agreement had been consummated Mokan came to be the owner of 44½% of the common stock and Columbia Oil the owner of all of the two classes of preferred stock, and, in addition, received or acquired all the rest of the outstanding shares of common stock, thus obtaining control of the voting power.

The Class A preferred stock is entitled to an annual dividend of $6 per share, plus participation up to 25% in any other dividends, which participation, this year, amounted to $4.03 per share, making a total dividend of $10.03 per share. This, of course, enures to the benefit of Columbia Oil, which owns all the preferred stock, and to the detriment of Mokan, whose only interest in Panhandle Eastern is in the common stock. Proposals have been made by Mokan to refinance the Class A preferred stock by replacing it by securities having an annual dividend rate not in excess of $4.50.

The present suit was instituted for the purpose, broadly stated, of restraining Columbia Oil from exercising its majority control to block the refinancing. It proceeds upon the theories, as stated in the bill of complaint, (a) that Columbia Oil is bound by the terms of the settlement not to obstruct refinancing of the Class A preferred whenever (as now) it can be done upon a more advantageous basis, and (b) that Columbia Oil's refusal to permit refinancing is a breach of the trust relationship which a controlling stockholder owes to the corporation and to the minority stockholders. Specifically, the prayers are (1) that Columbia Oil be restrained from selling or disposing of its interest in the Class A preferred stock, (2) that it be restrained from voting its shares of common stock on any proposal of refinancing, and (3) that it be restrained from demanding or receiving any dividends on the Class A preferred stock in excess of $4.50 per share. Panhandle Eastern is also included, with a prayer to restrain it from paying any such dividend.

Gano Dunn, the other defendant, comes into the case because of the fact that part of the consent decree of January 29, 1936, which gave rise to the subsequent settlement, provided that Columbia Oil transfer to him as trustee all its stock in Panhandle Eastern then held or subsequently to be acquired. The decree outlined the terms of the trust. The trustee was, generally, to vote the stock as directed by the beneficial owners, subject only to certain specific restrictions as to voting in elections of directors and a general restriction, "except when such directions are inconsistent with the purposes of this decree."

The principal ground upon which the defendant contends that Federal jurisdiction exists and upon which it justifies its removal into this Court is that the prayers of the bill of complaint constitute an at-

tack upon, a modification of, and an interference with, the operation of the consent decree of the Federal Court. This ground can be sustained only if we accept the premise that the trustee provisions of the consent decree were intended to guarantee Columbia Oil, for as long as the decree stood unmodified, complete freedom from the ordinary court supervision and control, in whatever use it might choose to make of its power to control Panhandle Eastern, provided only it did not attempt to revive the monopoly. Under this view, the only remedy open to a security holder whose rights might be invaded by an opressive exercise of the voting control would be an application to the Federal Court for a modification of the decree to meet the particular situation presented. This, in effect, would mean that the Federal Court had taken over full charge of the internal affairs of Panhandle Eastern, without regard to whether any proposed action had any relation to the purpose of the decree or whether it affected in any way the objectives at which it was aimed. Obviously this was not intended.

The decree was, by its express terms and by all the implications arising from its background, primarily designed to prevent Columbia Oil, and its affiliates, from dominating and controlling Panhandle Eastern in such manner as to eliminate competition between it and other companies and so monopolize interstate commerce in natural gas in certain sections of the country. All that the express provisions, relied on by the defendant, do is to leave Columbia Oil the freedom of action of any stockholder—no less and no more. Nor was the decree intended to perpetuate any particular form of corporate structure. As a matter of fact, the Class A preferred was not even in existence at the time the decree was made. It was created as a result of a series of negotiations which Columbia Oil was bound to institute, but the consummation of which was entirely a matter of mutual agreement. The terms and preferences of the stock were also, of course, fixed in this manner. It is impossible to construe the decree as intending to freeze into permanence a corporate set-up which had not even been agreed upon and as to which the decree did not attempt to impose any obligations upon the parties except the general one that it might not be used to violate the anti-trust laws. To a situation of this kind, the case chiefly relied upon by the defendant, Torquay Corporation v. Radio Corporation of America, D. C., 2 F.Supp. 841, has no application. The suit in that case was really an attempt in the state court to restrain the enforcement of an important provision of the decree of the Federal Court.

The second ground upon which Federal jurisdiction is asserted falls with the first. If this bill of complaint does not touch the substance of the decree of the Federal Court, as I think it does not, then the interests of the United States are in no way affected. The United States is not an indispensible party, and the suit may be maintained in the State Court.

The third ground upon which Federal jurisdiction is asserted is that the relief asked for in the bill of complaint constitutes an interference with other proceedings now pending in the Federal Court in the District of Delaware.

The record shows that on January 12, 1939, the Government filed a supplemental complaint in its anti-trust suit in the United States District Court for the District of Delaware for a complete divestiture by Columbia Oil of its stockholdings in Panhandle Eastern, or, in the alternative, by Columbia Gas, an affiliated company, of its stockholdings in Columbia Oil. Answers were filed and the suit is pending. It has not been tried for the reason that the defendants, Columbia Oil and Columbia Gas, filed with the Court a plan adopting the second alternative and asking for a modification of the consent decree so that the plan could be approved. On July 10, the motion for approval of the proposed plan and for modifications of the consent decree was referred to a special master. The special master reported recommending the approval of the plan with certain modifications. Argument on objections to the special master's report was heard on April 23, 1940, by Judge Nields. No decision has as yet been rendered.

It may be that, if the plan is approved by the Court, some of its provisions would be interfered with to some extent, if, as requested by the first branch of the relief asked for in this suit, an injunction should issue restraining Columbia Oil from disposing of its interest in the preferred stock of Panhandle. However, it goes without saying that this Court has no knowledge whether the plan ever will be approved, nor whether, if approved, it will be modified, and if so in what particulars. To say that this Court must take the pending suit out of the hands of the Court of Chancery of Delaware because a decree of a Federal

Court may some day be modified in such manner that one of the prayers of this bill might interfere with its operation in some particulars, is carrying the argument for Federal jurisdiction beyond any reasonable limits. If, after the remand of this case, the decree should be modified in the manner suggested, then the question might arise of the power of the District Court to proceed and there might be ground for a subsequent removal, but until that situation arises, there is none. It may also be that the prayers of the present bill of complaint can be amended in such manner as to avoid it also.

There being no ground upon which Federal jurisdiction of this cause can be sustained, it is remanded to the Court of Chancery of the State of Delaware.